# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## TURNER v. TURNER.

### APRIL 2ND, 1885.

1. USURY—*Judgment.*—Where an instrument on its face reserves more than the legal rate of interest, it is usurious in its inception, and judgment shall be rendered for the principal sum only, although the defendant may have filed no plea of usury. Acts 1874, ch. 122, sec. 8, p. 135.

2. IDEM—*Borrower—Relief.*—Where a borrower, who has paid no part of the principal, or usurious interest, comes into chancery under Code 1873, ch. 137, sec. 12, he must be required to pay only the principal sum loaned or forborne. Acts 1874, ch. 122, sec. 5.

3. IDEM—*Payments—Application.*—Where payments have been made on the usurious contract, which are merely credited on the bond, and not applied specially, borrower is entitled to have such payments deducted from the principal sum loaned or forborne.

4. IDEM—*Application of payments—Rule—Exception.*—To the rule that the creditor may apply payments when the debtor does not, there is the well recognized exception that he cannot apply them to what is no legal or equitable demand against the payer.

5. IDEM—*Quære.*—Whether or not the creditor can apply payments to usurious interest where debtor has made no application.

Appeal from decrees of circuit court of Greensville county, entered October 6th, 1881, October 27th, 1882, and December 2nd, 1882, respectively, in the cause wherein Samuel B. Turner, administrator of John S. Turner, deceased, and others, were plaintiffs, and E. L. Turner, trustee, and others, were defendants. Those decrees were in favor of the defendants, and the plaintiffs appealed.

Opinion states the case.

*L. D. Yarrell* and *Collier & Budd*, for the appellants.

*Friend & Davis*, for the appellees.·

HINTON, J., delivered the opinion of the court.

On the first day of February, 1875, John S. Turner executed a deed reciting an indebtedness by him to E. J. Peebles, guardian of E. L. Peebles, by bond of even date with the deed, in the sum of $2,100, payable February 1st, 1876, with interest from date, at the rate of eight per centum per annum, and conveying to E. L. Turner, trustee, certain real estate in Greensville county, to secure the same.

In 1881, the obligor in the bond having, in the meanwhile, died, and the trustee being about to sell the property, the administrator and heirs of the said John S. Turner brought this suit, to enjoin the said trustee from making sale of the property, and for other purposes not necessary to be stated. The bill neither charges usury nor seeks a discovery. In the progress of the cause, however, the attention of the court was called, in the reports of both the trustee and commissioner, made to April term 1882, to the fact that the bond and deed of trust were usurious on their face; and, at the same term, the plaintiffs filed a petition, in which they set forth the same fact; assert that all payments made by the said John S. Turner, in his lifetime, must be applied wholly to the reduction of the principal; and ask that the trustee may be enjoined from selling any more of the real estate conveyed in the deed than may be necessary to pay off the balance of principal of the said bond, after applying all of the credits to the reduction of the principal of the debt alone. A jury was waived by the parties, and the case was submitted to the court. The court, in its decree, held that the obligor having, in his lifetime, paid the usurious interest, and a portion of the principal of the bond, the plaintiffs could not recover back the whole interest paid, but simply the excess paid over and

above the legal rate of six per centum, and that the amount due upon the bond was to be ascertained by applying the payments made by the said John S. Turner, in his lifetime, first to the payment of the legal interest accrued upon the bond to the dates of the payments, respectively, and then to the principal of the bond. It also held that the defendants, S. L. Fuller and Ella L. Fuller, his wife (formerly E. L. Peebles), to whom the bond had been assigned by the guardian, were entitled to the lien and security of the deed of trust for the payment of the balance so to be ascertained, with interest from the date of the decree; and directed the trustee to proceed to sell as much of the property as might be necessary for that purpose. From this decree an appeal was allowed the administrator.

Now it seems perfectly clear that the court committed no error in holding this transaction usurious in its inception. The word "interest" is a technical word, and has a definite and well-understood legal acceptation. It imports a compensation taken for the loan or use of money; and in this sense it must always be taken and construed, except when it is made satisfactorily to appear that it was not used in its proper sense. Usury also, has a definite and well-understood legal meaning. It consists in taking more than the lawful rate of interest for the loan or forbearance of money. In this case, the reservation on the face of the instrument is of more than the legal rate of interest, and it is, therefore, usury. In such a case we agree with Justice Story, that there is no room for presumption: for the intent is apparent; *res ipsa loquitur.* 3 Pars. on Contracts, 107; *U. S. v. Waggener*, 9 Pet. 399. If, however, we had any doubt upon this point, the case seems to be covered by the terms of the 8th section of the act of March 24, 1871, Acts 1874, ch. 122, p. 135, which provides that where the contract or assurance is in writing, and usurious interest is provided for therein, judgment shall be rendered for the principal sum only, although the defendant may have failed to file a plea of usury.

Our next inquiry will be as to the measures of relief in cases of this kind.

In *Marks* v. *Morris*, 2 Munf. 407, it was determined that no terms should be imposed upon a debtor by deed of trust, who wanting no discovery, yet found it necessary to apply to a court of chancery to stay the trustees from selling until the question of usury should be inquired into; but that the trustee should be enjoined from selling in such case, until by some proper proceeding to be instituted by the creditor, he should establish the validity of his contract; in which case, the injunction should be dissolved; and, in the other event, perpetuated. And the design of the tenth section of chapter 141 of the Code of 1849, which is the same as section 12 of chapter 137 of the Code of 1873, was, as Judge Moncure has pointed out, in *Brockenbrough's ex'ors* v. *Spindle's adm'rs*, 17 Gratt. 26, to adopt the principles of that case, and give to it the force and form of statutory law. The object and purpose of the enactment of section 12 of chapter 137, Code 1873, being then to afford the borrower, although plaintiff in the suit, the same relief to which the lender would be entitled if he were plaintiff seeking to make his claim available, the inquiry as to the measure of relief in cases where the debtor wants no discovery, but simply seeks to stay the trustee from selling until the character of the transaction can be inquired into, may generally, if not always, be resolved into the inquiry, what would be the measure of recovery to which the lender would be entitled were he, the plaintiff here, seeking to recover his debt. And this last inquiry seems to be answered by the 5th section of chapter 122, Acts 1874, which, by making the contract or assurance illegal as to the excess beyond the principal amount loaned or forborne, excludes the lender from recovering more than his principal sum. The principal sum loaned or forborne, therefore, is, we think, the amount which the borrower must be required to pay when he comes into chancery under the provisions of the twelfth section, without

having paid any portion of the principal or usurious interest. But suppose, as in the case with which we are dealing, there have been payments made by the obligor to the obligee, which have been simply credited on the bond, and there is nothing which shows that any application of these payments was made either by the debtor or creditor? The question then arises whether such payments can be recovered back, or, what amounts to the same thing, be set off against the principal of the debt. That it can be so set off, in such a case, we have no doubt. There is this well-recognized exception to the rule that the creditor may apply where the debtor does not, "that the creditor has no right to apply the money paid to him to the satisfaction of what does not, nor ever did, constitute any legal or equitable demand against the party making the payment." 2 Chitty on Contracts, 1114 *et seq.* In *Gill* v. *Rice*, 13 Wisc. 553, the supreme court of that state held that when no directions have been given by the debtor, that the law would apply a payment upon a usurious contract, to the extinguishment of the principal sum loaned. And in *Stanley* v. *Rice*, the supreme court of Texas, held that the law would not apply a general payment, nor authorize the creditor to apply it, without the consent of the debtor, to the payment of usury. 16 Texas R. 201.

In *Mosely* v. *Brown*, 76 Va. 419, the debtor came into court charging usury, both in the inception of the contract and in the subsequent payments of interest for the forbearance. It appearing, however, upon the facts of that case, that the notes secured by the deed of trust were free from the taint of usury, but that illegal interest had been subsequently paid for the forbearance, the only question there presented was, upon what terms should the debtor be allowed to recover back the illegal interest so paid; but it cannot be doubted that if the debtor had been able to make good the other charge in his bill, namely, that the notes secured by the deed of trust were usurious in

their inception, he would have been entitled to the relief afforded by the twelfth section of chapter 137, Code 1873.

Now, from what has been said, it will be seen that, in this case, there being no evidence that any application of the payments, which amount in the aggregate to $1,722, was made by either debtor or creditor (if indeed the creditor could make such application, upon which point we express no opinion), that amount must be set off against the principal of the debt, amounting to $2,100, and that a decree must be rendered for the balance of $378, with interest from date of the decree, to-wit: December 1st, 1882.

The decree of the circuit court of Greensville county, being erroneous in the respect above indicated, it must be to that extent reversed, and a decree be entered here in accordance with the views above expressed, and that the cause must be then remanded for further proceedings, in order to a final decree.

RICHARDSON, J., dissented.

DECREE REVERSED.